UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LE'KEISHA BROWN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 3:17-cv-30030-MAP |
| | ) |
| AARON BUTLER, | ) |
| | ) |
| Defendant | ) |

REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO DISMISS
(Dkt. No. 8)

ROBERTSON, U.S.M.J.

I.     INTRODUCTION

Plaintiff Le'Keisha Brown ("Plaintiff") was arrested by Defendant Springfield Police

Officer Aaron Butler ("Defendant") for disorderly conduct, assault and battery, and resisting

arrest in the aftermath of Plaintiff's sister's arrest at 115 Westford Circle in Springfield,

Massachusetts on March 10, 2015.  Plaintiff's nine count complaint arising from this incident

presents two federal causes of action under 42 U.S.C. §§ 1983 and 1988:  a claim for unlawful

arrest (Count I); and a claim for the use of excessive force (Count V).  Plaintiffs' pendant state

law claims allege violations of the Massachusetts Civil Rights Act ("MCRA"), Mass Gen. Laws

ch. 12, §§ 11H, 11I (Counts II and VI), false arrest (Count III), false imprisonment (Count IV),

assault and battery (Count VII), malicious prosecution (Count VIII), and abuse of process (Count

IX).

Plaintiff filed suit against Defendant in his individual capacity on March 24, 2017 (Dkt.

No. 1).  Defendant has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) (Dkt. No.

8).  Plaintiff has opposed dismissal, Defendant has replied to Plaintiff's opposition, and Plaintiff

1

has submitted a sur-reply (Dkt. Nos. 10, 18, 21).  Defendant's motion has been referred to this

court for a report and recommendation (Dkt. No. 13).  *See* 28 U.S.C. §636(b)(1)(b); Fed. R. Civ.

P. 72.  The undersigned held a hearing on August 3, 2017, and for the reasons detailed below,

recommends that Defendant's motion be DENIED as to Counts I, III, IV, V, VII, VIII, and IX,

and ALLOWED as to Counts II and VI, the MCRA claims.

     II.    F<small>ACTUAL</small> B<small>ACKGROUND</small>

     On March 10, 2015, Plaintiff's sister, Tamika Brown, lived in the second floor apartment

of the two family house at 111-115 Westford Circle with her sons, a fourteen year old ("Minor

1") and an eleven year old ("Minor 2") (Dkt. No. 1 ¶¶ 5, 6, 10, 11).[1]  Although Tamika's

apartment had a separate entrance, she shared the front porch with the resident of the first floor

apartment, whose address was 111 Westford Circle (*id.* ¶¶ 11, 12).

     Tamika called Plaintiff on the telephone at approximately 6:00 P.M. on March 10, 2015

(*id.* ¶ 6).  Plaintiff hung up because Tamika "sounded intoxicated and was not making sense" (*id.*

¶ 7).  Shortly thereafter, Minor 1 called Plaintiff (*id.* ¶ 8).  Plaintiff immediately went to 115

Westford Circle because Minor 1 was "clearly upset and crying" during the telephone call (*id.* ¶¶

8, 9).  When Plaintiff arrived at her sister's residence, Minor 1 and Minor 2 were in their

neighbor's first floor apartment at 111 Westford Circle (*id.* ¶¶ 13, 14).  Plaintiff observed injuries

to Minor 1's hand and to Minor 2's head (*id.* ¶ 15).  Plaintiff then proceeded upstairs to speak

with Tamika (*id.* ¶¶ 13, 16).  While Plaintiff was with her sister, she saw a Springfield police

cruiser arrive and went downstairs to the front porch to speak to Officers Kevin Ashworth and

John Corey (*id.* ¶¶ 17, 18, 19, 20).

---

[1] Because Plaintiff, her sister, and their mother, Jereliene Brown, share the same surname,
Plaintiff's sister and mother will be referenced by their first names to avoid confusion.

Officer Ashworth entered the first floor apartment and spoke to Minor 1 and Minor 2 while Officer Corey stayed on the front porch with Plaintiff (*id.* ¶¶ 19, 20).  The officers then indicated that they were going to arrest Tamika for assaulting her children (*id.* ¶ 21).  Plaintiff offered to "take temporary custody" of the boys, but when Officer Ashworth indicated that they would release the children only to their father or a grandparent, Plaintiff called her mother, the boys' grandmother Jereliene Brown (*id.* ¶¶ 21, 22, 23).

Defendant arrived to assist Officers Ashworth and Corey and two paramedics arrived to assess Minor 1's and Minor 2's injuries (*id.* ¶¶ 24, 25).  "At some point," Tamika exited 115 Westford Circle and was arrested by Officers Ashworth and Corey, who transported her to the Springfield Police Department (*id.* ¶¶ 26, 27).  Defendant remained at the scene while the paramedics treated the children's injuries (*id.* ¶ 28).

Jereliene arrived shortly thereafter to take custody of the children and spoke to them inside the first floor apartment (*id.* ¶¶ 29, 30).  According to the complaint, Plaintiff then entered Tamika's apartment and "secured it by locking all the windows and doors" (*id.* ¶ 31).  When Plaintiff returned to the front porch, Jereliene asked her for access to Tamika's apartment to get clothing and shoes for the children who were not properly dressed for the weather (*id.* ¶ 32).  Defendant told Jereliene that she was not permitted to accompany Minor 1 upstairs (*id.* ¶ 33).  When Defendant stated that "he would be the only person to accompany Minor 1" into the apartment, Plaintiff allegedly told him that "she could not allow him to enter 115 Westford Circle because he did not have a warrant, no one had invited him inside, and there was no ongoing emergency requiring him to go inside" (*id.* ¶¶ 34, 35).  Plaintiff then opened the door to Tamika's apartment and Minor 1 entered (*id.* ¶ 36).

As Minor 1 entered Tamika's apartment and Plaintiff attempted to close the door behind him, Defendant allegedly used both hands to shove Plaintiff against the front porch railing (*id.* ¶¶ 36, 37).  Plaintiff alleges that as she tried to regain her balance, Defendant pushed her again and she fell (*id.* ¶ 38).  Plaintiff stood up and tried to grab the apartment door, but Defendant allegedly "stepped inside the doorway, wedged his body against . . . Plaintiff, and cocked his fist back as if to throw a punch at [her]" (*id.* ¶¶ 39, 40).

Jereliene intervened by stepping between Defendant and Plaintiff (*id.* ¶ 41).  According to the complaint, Defendant stated that "it was all a misunderstanding" (*id.* ¶ 42).  Plaintiff alleges that she then told Defendant that he violated the law by "stepping inside" Tamika's apartment without a warrant (*id.* ¶ 43).  Defendant allegedly responded by expressing his intent to arrest Plaintiff and radioing for back-up (*id.* ¶¶ 44, 45).  Officers Jameson Williams and Igor Basovskiy responded to Defendant's call (*id.* ¶ 46).

Defendant and Officer Williams handcuffed Plaintiff (*id.* ¶ 47).  The complaint alleges that Defendant and Officers Williams and Basovskiy ignored Plaintiff's request to be searched by a female officer and "groped" her "making her feel violated and humiliated" (*id.* ¶ 48).  Plaintiff alleges that she did not resist arrest (*id.* ¶ 50).

On March 11, 2015, upon Defendant's application to the Springfield District Court, a criminal complaint (Docket No. 1523 CR 1399) was issued charging Plaintiff with one count each of assault and battery, resisting arrest, and disorderly conduct (*id.* ¶¶ 51, 52).  During Plaintiff's jury trial in the Springfield District Court on January 6 and 7, 2016, the judge allowed

her motion for a required finding of not guilty on "count two" and the jury acquitted her of "counts one and three" (*id.* ¶¶ 53, 54).[2]

III.   <u>ANALYSIS</u>

A.   <u>Standard of Review</u>

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint's claim for relief.  *See New Eng. Gen-Connect, LLC v. U.S. Carburetion, Inc.*, CIVIL ACTION NO. 16-12270-GAO, 2017 WL 4364176, at *1 (D. Mass. Sept. 29, 2017).  To evaluate the motion, the court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor."  *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)).  The complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and should "contain 'enough facts to state a claim to relief that is plausible on its face.'"  *Maddox,* 732 F.3d at 80 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44–45 (1st Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id.* at 44 (quoting *Iqbal*, 556 U.S. at 679).  "'[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is

---

[2] Plaintiff does not identify which charge corresponded to each count of the complaint (Dkt. No. 1 ¶ 54).

plausible.'" *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 14 (1st Cir. 2011) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)).

"The plausibility standard invites a two-step pavane." *Maddox*, 732 F.3d at 80.  First, "the court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P. R.*, 676 F.3d 220, 224 (1st Cir. 2012)).  Then, the court "must determine whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Morales-Cruz*, 676 F.3d at 224 (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff's nine claims fall into three broad categories:  (1) claims concerning the alleged absence of probable cause for her arrest (Counts I, II, III, IV); (2) claims concerning Defendant's purported use of excessive force (Counts V, VI, VII); and (3) claims concerning Defendant's application for a criminal complaint in the Springfield District Court (Counts VIII and IX).  The individual claims in each category will be discussed in turn.

     B.    <u>Claims Concerning Plaintiff's Alleged Unlawful Arrest</u>

          1.    Count I - Unlawful Arrest Under 42 U.S.C. § 1983

Count I asserts an unlawful arrest claim under 42 U.S.C. § 1983.  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).  "To state a claim under Section 1983, a plaintiff must show [1] that the challenged conduct was committed by a person acting under color of state law and [2] that the conduct worked a deprivation of rights, privileges, or immunities secured by the

Constitution or federal law." *Diaz v. Devlin*, 229 F. Supp. 3d 101, 109 (D. Mass. 2017) (citing

42 U.S.C. § 1983; *Soto v. Flores*, 103 F.3d 1056, 1061 (1st Cir. 1997)).

Plaintiff alleges that Defendant violated her Fourth Amendment right to be free from a

false arrest. *See Cox v. Hainey,* 391 F.3d 25, 30 (1st Cir. 2004); *Peña-Borrero v. Estremeda*, 365

F.3d 7, 12 (1st Cir. 2004) ("The Fourth Amendment guarantees individuals 'the right "to be

secure in their persons . . . against unreasonable . . . seizures" of the person.'") (quoting *Graham*

*v. Connor*, 490 U.S. 386, 394 (1989). *Compare Camilo–Robles v. Hoyos,* 151 F.3d 1, 6 (1st Cir.

1998) ("The right to be free from unreasonable seizure (and, by extension, unjustified arrest and

detention) is clearly established in the jurisprudence of the Fourteenth Amendment (through

which the Fourth Amendment constrains state action)."). There is no dispute that Defendant was

acting "under color of state law." *Diaz,* 229 F. Supp. 3d at 109. However, he contends that

either Plaintiff's arrest was lawful or, if it was not, qualified immunity exempts him from

liability.

         a.     Relevant Law

         i.     Qualified Immunity

"The principle of qualified immunity shields a police officer from liability for civil

damages when his conduct does not violate clearly-established statutory or constitutional rights

of which a reasonable person would have known." *Nuon v. City of Lowell*, 768 F. Supp. 2d 323,

333 (D. Mass. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). *See Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests —

the need to hold public officials accountable when they exercise power irresponsibly and the

need to shield officials from harassment, distraction, and liability when they perform their duties

reasonably." *Pearson*, 555 U.S. at 231. Qualified immunity's protection applies irrespective of

"whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).  Thus, qualified immunity "protects all but the 'plainly incompetent and those who knowingly violate the law.'" *Pagán v. Calderón*, 448 F.3d 16, 31 (1st Cir. 2006) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"To assess qualified immunity claims in § 1983 actions, the [c]ourt applies a two-step inquiry." *Campbell v. Casey*, 166 F. Supp. 3d 144, 149 (D. Mass. 2016).  *See Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 97 (1st Cir. 2013) (quoting *Santana v. Calderón,* 342 F.3d 18, 23 (1st Cir. 2003)).  "First, [the court] inquire[s] whether the facts, taken most favorably to the party opposing [dismissal], make out a constitutional violation." *Ford v. Bender*, 768 F.3d 15, 23 (1st Cir. 2014).  "Second, [the court] inquire[s] whether the violated right was clearly established at the time that the offending conduct occurred." *Id.* "The second, 'clearly established,' step itself encompasses two questions: [a] whether the contours of the right, in general, were sufficiently clear, and [b] whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right." *Id. See Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir. 2009).  *See also McKenney v. Mangino*, 873 F.3d 75, 81 (1st Cir. 2017).  Although "[t]he [c]ourt may exercise its discretion in determining which of the two [steps] should be addressed first," *Campbell*, 166 F. Supp. 3d at 149, the questions posed by both steps must be answered in the affirmative for a plaintiff to defeat a qualified immunity defense.  *See Raiche v. Pietroski*, 623 F.3d 30, 35 (1st Cir. 2010).

ii.     Probable Cause

Whether Plaintiff has adequately alleged a basis for a false arrest claim and whether Defendant is entitled to qualified immunity at this stage of the litigation requires a determination

of whether or not Plaintiff's warrantless arrest was supported by probable cause as required by the Fourth Amendment. *See Santiago v. Fenton*, 891 F.2d 373, 383 (1st Cir. 1989) ("The Fourth Amendment right to be free from unreasonable seizures of the person demands that an arrest be supported by probable cause.") (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "[T]he constitutionality of a warrantless arrest 'depends . . . upon whether, at the moment the arrest was made, the officer[] had probable cause to make it - whether at that moment the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that . . . [Plaintiff] had committed or was committing an offense.'" *United States v. Figueroa*, 818 F.2d 1020, 1023 (1st Cir. 1987) (quoting *Beck*, 379 U.S. at 91). *See Goddard v. Kelley*, 629 F. Supp. 2d 115, 124 (D. Mass. 2009). "If probable cause exists to arrest, then there has not been a constitutional deprivation" under § 1983 and Defendant is entitled to qualified immunity. *Sietins v. Joseph*, 238 F. Supp. 2d 366, 375 (D. Mass. 2003). *See Ford*, 768 F. 3d at 23. Conversely, it has long been well-established that an arrest without probable cause is a constitutional violation. *See Prokey v. Watkins*, 942 F.2d 67, 74 (1st Cir. 1991).

"To determine whether an officer had probable cause to arrest an individual, [the court] examine[s] the events leading up to the arrest, and then decide[s] 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). "The exact degree of certainty required to establish probable cause is difficult to quantify; it falls somewhere between '"bare suspicion" [and] what would be needed to "justify . . . conviction."'" *Burke v. Town of Walpole*, 405 F.3d 66, 80 (1st Cir. 2005) (quoting *Valente v. Wallace*, 332 F.3d 30, 32 (1st Cir. 2003)). "'The substance of all the definitions of

probable cause is a reasonable ground for belief of guilt.'"  *United States v. Bashorun*, 225 F.3d 9, 17 (1st Cir. 2000) (citation omitted).  Because the unlawful arrest analysis under § 1983 focuses on the existence of probable cause, the crimes with which Plaintiff was charged is inconsequential.  "Whether the arresting officers had probable cause is 'not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest.'"  *Goddard*, 629 F. Supp. 2d at 124-25 (quoting *United States v. Jones,* 432 F.3d 34, 41 (1st Cir. 2005)); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

The Defendant focuses on whether, as a matter of law, he was entitled to accompany Minor 1 into the apartment where the children were injured and, conversely, whether Plaintiff was warranted in preventing his entry.  This is, in large part, a red herring because Plaintiff's § 1983 claims are not based on Defendant's entry into her sister's apartment.  The proper focus for the qualified immunity determination is whether Defendant violated Plaintiff's Fourth Amendment right by arresting her without probable cause.  *See Ford*, 768 F.3d at 23.  Defendant maintains that, in light of Plaintiff's "interference with his attempt to enter" Tamika's apartment, he is entitled to qualified immunity because her acts gave rise to probable cause to arrest her for disorderly conduct and disturbing the peace, and he had a reasonable basis to believe he had probable cause to arrest her for committing the common law crime of interfering with the performance of his duties as a police officer (Dkt. No. 9 at 4, 6, 10, 12).  *Id.*  A fundamental flaw with Defendant's contentions is that they depend on viewing the facts in the light most favorable to Defendant and drawing all inferences in his favor.  That is not the applicable standard. Viewing the allegations in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, she has adequately alleged that she was arrested without probable cause,

and that a reasonable officer in Defendant's position would have known there was no probable cause to arrest her. Accordingly, Defendant is not entitled to qualified immunity or to dismissal of Count I at this stage of the litigation.

        b.    Disorderly conduct

Plaintiff was arrested for being a "disorderly person" (Dkt. No. 1 ¶ 51). Mass. Gen. Laws ch. 272, § 53. [3]

> A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, [s]he: (a) engages in fighting or threatening, or in violent or tumultuous behavior; or . . . (c) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor. "Public" means affecting or likely to affect persons in a place to which the public or a substantial group has access.

*Alegata v. Commonwealth*, 231 N.E.2d 201, 211 (Mass. 1967) (quoting MODEL PENAL CODE § 250.2 (Am. Law Inst., Proposed Official Draft 1962)).

Defendant does not assert that he had probable cause to arrest Plaintiff under subsection (a) of the disorderly conduct definition (Dkt. No. 9 at 13). The complaint alleges that Plaintiff attempted to close the door after Minor 1 entered the apartment (Dkt. No. 1 ¶ 37). There is no allegation that, in doing so, Plaintiff laid a hand on Defendant or that she intentionally touched him thereafter (Dkt. No. 1 ¶¶ 37, 38, 40; Dkt. No. 18 at 8). [4] Therefore, she "did not engage in

---

[3] Mass. Gen. Laws ch. 272, § 53 provides:

> Common night walkers, common street walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, disturbers of the peace, keepers of noisy and disorderly houses, and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment.

[4] Notwithstanding Defendant's failure to argue that Plaintiff violated subsection (a), his reply brief claims that he had probable cause to arrest Plaintiff for assault and battery on a police

any 'fighting' or in any physically 'violent' behavior . . ." as described in subsection (a).

*Commonwealth v. Sholley*, 739 N.E.2d 236, 242 & n.2 (Mass. 2000) (quoting MODEL PENAL

CODE § 250.2 (Am. Law Inst., Official Draft 1980)).  *See Commonwealth v. Sinai*, 714 N.E.2d

830, 834 (Mass. App. Ct. 1999).  Nor did she threaten to commit a crime or make remarks of a

"threatening nature."  *Sholley,* 739 N.E.2d at 242.  Finally, her conduct cannot be characterized

as "tumultuous;" that is, "involving riotous commotion and excessively unreasonable noise so as

to constitute a public nuisance."  *Commonwealth v. A Juvenile*, 334 N.E.2d 617, 628 (Mass.

1975).  *See Sholley*, 739 N.E.2d at 243 ("Noisy behavior that attracts a crowd of onlookers is a

common feature of cases involving 'tumultuous' conduct.").

　　　In order to arrest Plaintiff for disorderly conduct as defined by subsection (c), Defendant

must have had probable cause to believe that her conduct "(1) created a hazardous or physically

offensive condition and (2) served no legitimate purpose."  *Wilber v. Curtis*, Civil Case No. 15-

10170-JCB, 2016 WL 5340308, at *7 (D. Mass. Sept. 22, 2016), *aff'd in part, vacated in part,*

*remanded by* 872 F.3d 15 (1st Cir. 2017).  *See Abraham v. Nagle*, 116 F.3d 11, 14 (D. Mass.

1997).  "Massachusetts courts have found hazardous or physically offensive conduct to include

acts such as the throwing of stink bombs, the strewing of nails or other dangerous substances in

public passageways, or urinating in public."  *Nuon*, 768 F. Supp. 2d at 331 n.4.

---

officer, in violation of Mass. Gen. Laws ch. 265, § 13D, based on her using "the door and her
body to push [Defendant]"  (Dkt. No. 18 at 8-9).  However, the complaint does not allege facts
supporting Defendant's claim that Plaintiff physically touched him as required to satisfy § 13D's
assault and battery element.  *See Commonwealth v. Porro*, 939 N.E.2d 1157, 1162 (Mass. 2010)
("An intentional assault and battery is 'the intentional and unjustified use of force upon the
person of another, however slight.' . . . A reckless assault and battery is committed when an
individual engages in reckless conduct that results in a touching producing physical injury to
another person; an unconsented touching is not sufficient.") (quoting *Commonwealth v. McCan*,
178 N.E. 633, 634 (Mass. 1931)).

Defendant maintains that, by refusing to obey his order, Plaintiff "potentially endangered herself, the children and the officers, who had been tasked with investigating and keeping the children safe" (Dkt. No. 9 at 14).  Defendant's contention, however, is not supported by the facts alleged in the complaint from which it can be fairly inferred that when Jereliene asked Plaintiff to unlock Tamika's apartment, Defendant knew that it was Tamika who had injured the children, that she had left the apartment, had been arrested and transported to the police station, and that no one remained in the apartment after Plaintiff locked the apartment's windows and doors and returned to the front porch (Dkt. No. 1 ¶¶ 8, 9, 15, 16, 26, 27, 31, 32).  The allegations in the complaint do not support an inference that a reasonable officer in Defendant's position would have believed that Plaintiff's conduct created a hazardous condition.

The complaint does not allege that Defendant ordered Plaintiff to step away from the door to Tamika's apartment.  If Defendant's declaration that he was the only person who would accompany Minor 1 into the apartment is viewed as a command, "a refusal to obey police orders [may] create[] a safety threat."  *Abraham,* 116 F.3d at 14.  However, the factual circumstances present here are not analogous to those in cases where disobedience to law enforcement has been found to create a hazardous condition and, therefore, constituted disorderly conduct.  *See Commonwealth v. Feigenbaum,* 536 N.E.2d 325, 328 (Mass. 1989) (blocking a tow truck and disregarding police warnings to move "created a hazardous condition"); *Commonwealth v. Molligi*, 872 N.E.2d 1166, 1169 (Mass. App. Ct. 2007), *abrogated on other ground by Commonwealth v. Wynton W.*, 947 N.E.2d 561 (Mass. 2011) ("the defendant's conduct — openly carrying a knife on a public street with pedestrian traffic, refusing [officer's] order, and fleeing across a public street and down a side street — created a hazardous or physically offensive condition affecting the public"); *Commonwealth v. Zettel,* 706 N.E.2d 1158, 1161 (Mass. App.

13

Ct. 1999) (defendant's failure to move an illegally parked car at an officer's request potentially created a hazardous or physically offensive condition); *Commonwealth v. LePore,* 666 N.E.2d 152, 156-57 (Mass. App. Ct. 1996) (voyeurism "created a physically offensive condition").

Whether or not Plaintiff's alleged acts met the "legitimate purpose" element of subsection (c) arguably presents a closer question. "'The import of the phrase . . . is broadly to exclude from this subsection any conduct that directly furthers some legitimate desire or objective of the actor.'" *Zettel*, 706 N.E.2d at 1161 (quoting MODEL PENAL CODE § 250.4 cmt. 5 (Am. Law Inst., Official Draft 1980)). At the hearing before the undersigned, Defendant agreed that Plaintiff's "lawful exercise of [her] First Amendment right" constitutes a "legitimate purpose." *A Juvenile*, 334 N.E.2d at 629. However, he contends that Plaintiff's interference with his entry into Tamika's apartment served no legitimate purpose given that Plaintiff had no Fourth Amendment right to exclude him from her sister's apartment (Dkt. No. 9 at 13). *See United States v. Battle*, 400 F. Supp. 2d 355, 358 (D. Mass. 2005) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.") (citing *Rakas v. Illinois,* 439 U.S. 128, 133–34 (1978)). *Compare Abraham*, 116 F.3d at 14 ("separating [defendant's] protected speech from his physical interference with two policemen struggling to arrest and detain a third person, which is not protected"). Plaintiff counters that even if she had no Fourth Amendment right to exclude Defendant from Tamika's apartment, she was "lawfully on private property expressing her opinion regarding the actions of a public official," which was afforded First Amendment protection (Dkt. No. 11 at 14). Although it is unclear from the allegations in the complaint if Plaintiff's attempt to close the door to prevent Defendant from entering Tamika's apartment is the sort of express conduct protected by the First Amendment and is thus the sort of legitimate purpose that is lawful under § 53, Plaintiff's arrest

14

immediately after she told Defendant that he had violated the law by entering Tamika's apartment without a search warrant raises a reasonable inference of an unlawful arrest motivated by Plaintiff's exercise of her First Amendment rights (Dkt. No. 1 ¶¶ 43, 44, 45, 46, 47). *See Abraham*, 116 F. 3d at 15 ("an arrest based on probable cause might still be unlawful if the police officer acted simply for the purpose of punishing protected speech"); *Commonwealth v. Richards*, 340 N.E.2d 892, 896 (Mass. 1976) ("[D]isorderly person provision of [section] 53 cannot constitutionally be the basis for criminal conviction for the use of protected speech and expressive conduct, even if that speech and conduct may be considered as offensive and abusive."); *A Juvenile*, 334 N.E.2d at 628 (subsections (a) and (c) do not apply to activities which involve the "lawful exercise of a First Amendment right"); *Sinai*, 714 N.E.2d at 833 ("[T]he defendant could not be convicted based solely on the exercise of his First Amendment rights."). *Compare Norwell v. City of Cincinnati,* 414 U.S. 14, 16 (1973) (per curiam) ("Surely one is not to be punished for nonprovocatively voicing [her] objection to what [she] obviously felt was a highly questionable detention by a police officer.").

In any event, it is not necessary to conclusively determine at this stage of the litigation whether or not Plaintiff engaged in legitimate protected conduct because as far as appears from the complaint, her alleged actions did not create a "public nuisance," which is required to support a lawful arrest for disorderly conduct (Dkt. No. 11 at 15). *Nolan v. Krajcik*, 384 F. Supp. 2d 447, 461 (D. Mass. 2005). As mentioned earlier, "[i]n order to interpret the term ['disorderly person'] and ensure its constitutionality, [the Supreme Judicial Court] has 'engrafted the Model Penal Code definition of "disorderly" onto the [Mass. Gen. Laws ch. 272,] § 53 offense' of being a disorderly person." *Commonwealth v. Accime*, 68 N.E.3d 1153, 1156-57 (Mass. 2017). "The comments to the Model Penal Code emphasize that '[n]othing less than conscious disregard of a

substantial and unjustifiable risk of public nuisance will suffice for liability.'"  *Id.* at 1157

(quoting MODEL PENAL CODE § 250.2 cmt. 2 (Am. Law Inst., Official Draft 1980)).

"Disorderly conduct embraces those activities that '"intentionally tend to disturb the public

tranquility, or alarm or provoke others."'"  *Id.* at 1158 (quoting *A Juvenile*, 334 N.E.2d at 627).

"For purposes of . . . § 53, 'public' is defined as 'affecting or likely to affect persons in a place to

which the public or a substantial group has access.'"  *Id.* (quoting *Alegata*, 231 N.E.2d at 211).

"The public element may be satisfied where the actor's conduct takes place on private property

that is frequented by the public, such as stores, apartment houses, or theaters." *Commonwealth v.*

*Mulvey*, 784 N.E.2d 1138, 1142 (Mass. App. Ct. 2003).

        Here, the incident occurred on the front porch of the private two-family home at 111-115

Westford Circle (Dkt. No. 1 ¶¶ 10, 12, 31, 33-44).  Therefore, "in order to satisfy the public

element of the crime, . . . the disturbance [must] have had or was likely to have had an impact

upon persons in an area accessible to the public." *Id.*  The complaint contains no allegations

from which it can be inferred that Plaintiff raised her voice.  *Compare Nuon*, 768 F. Supp. 2d at

332 (plaintiff's '"screaming,"' '"ranting and raving,"' and '"yelling"' was deemed not to be a public

nuisance).  "There was no [allegation] that a crowd, inquisitive neighbors, or passersby actually

saw or heard the disturbance." *Mulvey,* 784 N.E.2d at 1143.  *Compare Richards*, 340 N.E.2d at

895 (actions of defendants in a shopping mall attracted a crowd of about 200 people who were

hostile and abusive to police); *Sinai*, 714 N.E.2d at 834 (in the parking lot of the public town

beach, defendant screamed and yelled at a parking attendant and police officers, pounded on the

steering wheel of his vehicle with both hands, attempted to strike police officers, resisted arrest,

attracted a crowd of about twenty onlookers, and caused traffic to be rerouted); *Commonwealth*

*v. Mulero*, 650 N.E.2d 360, 363 (Mass. App. Ct. 1995) (police had probable cause to arrest

defendant for disorderly conduct during a roadside stop where defendant disobeyed orders to keep his hands on a police cruiser, flailed them in an agitated and belligerent manner while spewing loud profanities directed at officers and attracting a crowd of thirty people); *Commonwealth v. Carson*, 411 N.E.2d 1337, 1337-38 (Mass. App. Ct. 1980) (defendant resisted arrest outside a college dormitory while a crowd of about fifty people gathered).  "Nor was there any [allegation] . . . that people could have seen or heard [the disturbance] from any place of public access, such as a nearby sidewalk, publicly used path or road, shopping area or other neighborhood facility." *Mulvey,* 784 N.E.2d at 1143.  *Compare Accime*, 68 N.E.3d at 1160 (secluded room in the psychiatric area of a hospital emergency department was not a public place).

In light of the complaint's allegations, no reasonable police officer could have concluded that there was probable cause to arrest Plaintiff for disorderly conduct.

c.      Disturbing the Peace

For similar reasons, Defendant's contention -- that he is entitled to qualified immunity because there was a lawful basis to arrest Plaintiff for disturbing the peace -- also fails (Dkt. No. 9 at 12).  Like disorderly conduct, the offense of disturbing the peace is included in Mass. Gen. Laws ch. 272, § 53.  "As used in [that statute], the phrase 'disturbers of the peace' is construed in accordance with the common-law definition of the offense, making it a crime 'to disturb the peace of the public, or some segment of the public, by actions, conduct or utterances, the combination of which constitute[s] a common nuisance.'"  *Commonwealth v. Federico,* 876 N.E.2d 479, 483 (Mass. App. Ct. 2007) (quoting *Commonwealth v. Jarrett,* 269 N.E.2d 657, 659 (Mass. 1971)).  *See Commonwealth v. Orlando*, 359 N.E.2d 310, 312 (Mass. 1977) ("The provision against 'disturbers of the peace' proscribes conduct which tends to annoy all good

citizens and does in fact annoy anyone present not favoring it."). "A two-part test is used to determine whether a defendant's conduct constitutes disturbing the peace." *Commonwealth v. Hokanson*, 907 N.E. 2d 674, 677 (Mass. App. Ct. 2009) (citing *Commonwealth v. Orlando,* 359 N.E.2d 310, 312 (Mass. 1977)).

> It proscribes activities which, first, most people would find to be unreasonably disruptive, and second, did in fact infringe someone's right to be undisturbed. The first prong is normative and protects potential defendants from prosecutions based on individual sensitivities. The second prong requires that the crime have a victim, and thus subjects potential defendants to criminal prosecution only when their activities have detrimental impact.

*Orlando*, 359 N.E.2d at 312. "Time and place are factors to be considered in determining whether activities are 'unreasonably disruptive.'" *Federico,* 876 N.E.2d at 483 (quoting *Orlando,* 359 N.E.2d at 312). As is the case with the offense of disorderly conduct, § 53 cannot punish the use of "offensive and abusive language" unless it falls outside the scope of First Amendment protection, i.e. it constitutes "lewd and obscene, . . . profane, . . . libelous, and . . . insulting or 'fighting' words — those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942). *See Commonwealth v. Jarrett,* 269 N.E.2d 657, 662 (Mass. 1971) (construing the offense of disturbing the peace to exclude protected expression).

Viewing the complaint's allegations under the Plaintiff-friendly standard and applying the two-part test the Supreme Judicial Court enunciated in *Orlando*, Plaintiff's behavior fell short of "unreasonably disruptive conduct that annoy[ed] or disturb[ed] one or more other individuals." *Udemba v. Nicoli*, 237 F.3d 8, 13-14 (1st Cir. 2001). Her actions were limited to attempting to close the door behind Minor 1 after he entered Tamika's apartment and trying to grab the door after Defendant pushed her twice causing her to fall (Dkt. No. 1 ¶¶ 37-39). As discussed earlier, there is no allegation that Plaintiff spoke in a loud voice. *Compare Orlando*, 359 N.E.2d at 311,

313 ("[T]he defendant [who] hurled objects and verbally insulted individuals at approximately

11:45 P.M. near 'The Pub' in Walpole" within earshot of people "asleep in their homes" breached

the peace); *Hokanson*, 907 N.E.2d at 677-78 (defendant disturbed the peace by "'flailing'" and

"'shouting'" outside a police station causing "alarm" in a group of bystanders who gathered and

witnessed the defendant's belligerent conduct in the presence of police).  The fact that Plaintiff

also told Defendant that he had no legal right to enter Tamika's apartment and that he violated

the law by standing in the doorway does not transform her actions into a disturbance of the peace

(Dkt. No. 1 ¶¶ 35, 43).  "[T]he First Amendment protects a significant amount of verbal criticism

and challenge directed at police officers[.]"  *City of Houston v. Hill*, 482 U.S. 451, 461 (1987).

"The freedom of individuals verbally to oppose or challenge police action without thereby

risking arrest is one of the principal characteristics by which we distinguish a free nation from a

police state."  *Id*. at 462-63.

Moreover, even if Plaintiff's words and behavior were of the sort that constituted a breach

of peace, which they were not, for the reasons noted in the earlier discussion of disorderly

conduct, the complaint is bereft of allegations that satisfy the "public element" of the offense.

*Barbosa v. Hyland*, Civil Action No. 11-11997-JGD, 2013 WL 6244157, at *19 n.10 (D. Mass.

Dec. 2, 2013).  "To find a breach of the peace . . . an act must at least threaten to have some

disturbing effect on the public."  *Commonwealth v. Baez*, 678 N.E.2d 1335, 1338 (Mass. App.

Ct. 1997).  *See Hokanson*, 907 N.E.2d at 677-78 (defendant's belligerent conduct alarmed a

group of onlookers who gathered outside a police station); *Federico*, 876 N.E.2d at 483

(evidence was sufficient to convict defendant of disturbing the peace where he "awakened the

neighbors and disturbed their peace by once again tripping the motion sensors and ignoring the

[officers'] predictable reaction of ordering him to stop"); *Commonwealth v. Mullins,* 582 N.E.2d

562, 564 (Mass. App. Ct. 1991) (where defendant was blaring music and screaming obscenities from a window, circumstances amounted to breach of the peace because the "good citizens" of the neighborhood were disturbed).

For these reasons, Defendant lacked probable cause to arrest Plaintiff for disturbing the peace.

> d.      Interfering with the Duties of a Police Officer

Finally, Defendant appears to recognize that he did not have probable cause to arrest Plaintiff for interfering with the performance of his duty when she complained about his entry into Tamika's apartment without a search warrant, but argues that he made a reasonable mistake and is entitled to qualified immunity under the second step of the qualified immunity analysis (Dkt. No. 9 at 4-11; Dkt. No. 18 at 6).  According to Defendant, Mass. Gen. Laws ch. 119, § 51A,[5] which made him a mandated reporter of child abuse, and Mass. Gen. Laws ch. 209A, § 6,[6]

---

[5] In pertinent part, Mass. Gen. Laws ch. 119, § 51A says:

> A mandated reporter who, in his professional capacity, has reasonable cause to believe that a child is suffering physical or emotional injury resulting from: (i) abuse inflicted upon him which causes harm or substantial risk of harm to the child's health or welfare, including sexual abuse; (ii) neglect, including malnutrition; (iii) physical dependence upon an addictive drug at birth, shall immediately communicate with the [Department of Children and Families] orally and, within 48 hours, shall file a written report with the department detailing the suspected abuse or neglect; or (iv) being a sexually exploited child; or (v) being a human trafficking victim as defined by section 20M of chapter 233.

A "police officer" is a "mandated reporter."  Mass. Gen. Laws ch. 119, § 21.

[6] In pertinent part, section 6 of Mass. Gen. Laws ch. 209A, the Massachusetts domestic violence statute, says:

> Whenever any law officer has reason to believe that a family or household member has been abused or is in danger of being abused, such officer shall use all reasonable means to prevent further abuse.  The officer shall take, but not be limited to the following action:

which required him to remain in the dwelling where the suspected abuse occurred in order to prevent further abuse, conferred upon him the duty to protect Minor 1 and Minor 2 from abuse, the emergency or special needs exceptions to the warrant requirement permitted him to accompany Minor 1 into Tamika's apartment without a search warrant to carry out his duty, and a reasonable officer in his position would have believed that Plaintiff's interference with the performance of his duty supported probable cause for her arrest (Dkt. No. 9 at 4-11).  Plaintiff persuasively counters that, based on the facts alleged in the complaint, the reasonable inferences therefrom, and clearly established law, there were no exigent circumstances which required Defendant to enter Tamika's apartment without a search warrant in order to prevent further abuse

---

(1) remain on the scene of where said abuse occurred or was in danger of occurring as long as the officer has reason to believe that at least one of the parties involved would be in immediate physical danger without the presence of a law officer.  This shall include, but not be limited to remaining in the dwelling for a reasonable period of time;

(2) assist the abused person in obtaining medical treatment necessitated by an assault, which may include driving the victim to the emergency room of the nearest hospital, or arranging for appropriate transportation to a health care facility, notwithstanding any law to the contrary;

(3) assist the abused person in locating and getting to a safe place; including but not limited to a designated meeting place for a shelter or a family member's or friend's residence.  The officer shall consider the victim's preference in this regard and what is reasonable under all the circumstances; . . . .

"Abuse is defined in section one of chapter 209(A) as 'the occurrence of one or more of the following acts between family or household members: (a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; (c) causing another to engage involuntarily in sexual relations by force, threats and duress.'"  *Devine v. Woburn Police Dep't*, No. CV 14-13179-MBB, 2016 WL 5746348, at *8 (D. Mass. Sept. 30, 2016) (quoting Mass. Gen. L. ch. 209(A), § 1).  For purposes of the motion to dismiss, Plaintiff does not dispute Defendant's contention that Minor 1 and Minor 2 were victims of domestic violence under ch. 209A.

of the children and, therefore, Defendant is not entitled to qualified immunity (Dkt. No. 11 at 8-11).

Relying on *Commonwealth v. Shave*, No. 11-P-773, 2012 WL 1414999 (Mass. App. Ct. Apr. 25, 2012) (unpublished), courts of this circuit have recognized the Massachusetts common law crime of interference with the duties of a police officer in § 1983 cases in which defendant police officers have argued that they had probable cause to arrest for that crime. *See Wilber v. Curtis*, 872 F.3d 15, 19 (1st Cir. 2017); *Cocroft v. Smith*, 95 F. Supp. 3d 119, 126 (D. Mass. 2015); *see also* Mass. Gen. Laws ch. 279, § 5 (setting forth the punishment for common law crimes). "[A]n individual commits this offense by 'knowingly and designedly . . . hinder[ing], resist[ing], and oppos[ing]'" a police officer who is discharging his duties. *Wilber*, 872 F.3d at 21 (quoting *Commonwealth v. Tobin*, 108 Mass. 426, 429 (1871)). *See Cocroft*, 95 F. Supp. 3d at 126 ("[I]f Massachusetts were to recognize the common-law offense of obstructing a police officer in the performance of his duty, a conviction would require proof that the alleged violator acted with the specific intent to intimidate, hinder or interrupt the officer."); *Davila-Lynch v. City of Brockton*, Civil Action No. 09-110817-RGS, 2011 WL 4072092, at *5 n.11 (D. Mass. Sept. 12, 2011) (finding "a dispute of material fact as to whether [the defendants] had probable cause to arrest [plaintiff] for disturbing the peace and interfering with a police officer").

Defendant maintains that he is protected by qualified immunity because Plaintiff hindered his warrantless entry of Tamika's apartment, which a reasonable police officer could have believed was required by the statutes and permitted by the emergency aid or special needs exceptions to the Fourth Amendment's requirement that police secure a search warrant supported

by probable cause before entering a home. [7]  *See Kentucky v. King*, 563 U.S. 452, 459 (2011)

(citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)); *Illinois v. Rodriguez,* 497 U.S. 177,

181 (1990) ("The Fourth Amendment generally prohibits the warrantless entry of a person's

home whether to make an arrest or to search for specific objects."); *Welsh v. Wisconsin*, 466 U.S.

740, 748 (1984) ("'[P]hysical entry of the home is the chief evil against which the wording of the

Fourth Amendment is directed.'") (quoting *United States v. U.S. Dist. Court*, 407 U.S. 297, 313

(1972)).  While "'searches and seizures inside a home without a warrant are presumptively

unreasonable,'" *Brigham City*, 547 U.S. at 403 (quoting *Groh*, 540 U.S. at 559), "this

presumption may be overcome in some circumstances because '[t]he ultimate touchstone of the

Fourth Amendment is "reasonableness."'" *King*, 563 U.S. at 459 (quoting *Brigham City*, 547

U.S. at 403).  *See also Inman v. Siciliano*, Civil Action No. 10-10202-FDS, 2012 WL 1980408,

at *7 (D. Mass. May 31, 2012) ("It is well-established that a warrantless entry into a residence is

presumptively unconstitutional unless an exception applies.").  Exigent circumstances can

overcome the presumption.  *See United States v. Bain,* 874 F.3d 1, 16 (1st Cir. 2017) (citing

*King*, 563 U.S. at 460).  "To show exigent circumstances, the police must reasonably believe that

'there is such as compelling necessity for immediate action as will not brook the delay of

obtaining a warrant.'" *United States v. Samboy,* 433 F.3d 154, 158 (1st Cir. 2005) (citation

omitted).

---

[7] Defendant does not argue that exigent circumstances permitted him to accompany Minor 1 into
Tamika's apartment in order to prevent the destruction of evidence of a crime in anticipation of
the issuance of a search warrant and the allegations in the complaint would not support such a
contention.  *See Illinois* v. *McArthur*, 531 U.S. 326, 329-33 (2001) (upholding the "temporary
seizure" of the defendant's home that occurred when an officer accompanied the defendant into
his home and observed his activity to prevent the destruction of evidence while other officers
sought a search warrant for drugs that the police had probable cause to believe were present).

"A subset of this [exigent circumstances] doctrine is the so-called 'emergency aid' exception, which allows a warrantless entry based on 'the need to assist persons who are seriously injured or threatened with such injury.'" *Hill v. Walsh*, CIVIL ACTION NO. 16-10225-RGS, 2017 WL 2818987, at *3 (D. Mass. June 29, 2017) (quoting *Brigham City*, 547 U.S. at 403). *See Commonwealth v. Peters,* 905 N.E.2d 1111, 1114 (Mass. 2009) (the emergency aid exception "permits the police to enter a home without a warrant when they have an objectively reasonable basis to believe that there may be someone inside who is injured or in imminent danger of physical harm."). "To invoke this exception, 'the government must show a reasonable basis, approximating probable cause, both for the officers' belief that an emergency exists and for linking the perceived emergency with the area or place into which they propose to intrude.'" *Hill,* 2017 WL 2818987, at * 3 (quoting *United States v. Martins*, 413 F.3d 139, 147 (1st Cir. 2005)). *See Commonwealth v. Gordon*, 29 N.E.3d 856, 864 (Mass. App. Ct. 2015) ("The exception hinges on the existence of evidence that someone is in need of immediate assistance."). "This analysis is conducted 'in light of the totality of the circumstances confronting the officers, including, in many cases, a need for on-the-spot judgment based on incomplete information and sometimes ambiguous facts bearing upon the potential for serious consequences.'" *Hill,* 2017 WL 2818987, at * 3 (quoting *Martins*, 413 F.3d at 147). The court considers "the objective facts reasonably known to, or discoverable by, the officers at the time of the search." *United States v. Tibolt*, 72 F.3d 965, 969 (1st Cir. 1995).

Defendant also invokes the exception to the warrant requirement that exists in circumstances "when 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.'" *Griffin v. Wisconsin,* 483 U.S. 868, 873 (1987) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring in

judgment)).  "In such cases, other means than the warrant requirement may adequately serve to protect Fourth Amendment interests."  *United States v. Keith*, 980 F. Supp. 2d 33, 42 n.4 (D. Mass. 2013) (citing *Donovan v. Dewey,* 452 U.S. 594, 598–99 (1981)).

In the instant case, the allegations in the complaint do not support Defendant's purported duty and the application of the emergency aid or special needs exceptions to the search warrant requirement that would have permitted him to enter Tamika's apartment without a warrant. When Defendant said he intended to accompany Minor 1 (who was fourteen years old) into the apartment, Minor 1 was not threatened with immediate harm because Tamika had been arrested and removed from the scene and because the reasonable inference from the complaint's allegations, as shown by the objective facts known to Defendant, is that the apartment was empty.  *See King* 563 U.S. at 470 ("Any warrantless entry based on exigent circumstances must, of course, be supported by a genuine exigency.").  *Compare Doe v. Moffat*, No. 96-2351, 1997 WL 313971, at *1 (1st Cir. June 11, 1997) (per curiam) (a warrantless entry into a home to investigate a report of child abuse or neglect "fits within the exigent circumstances exception to the Fourth Amendment's warrant requirement if 'the state actors making the search . . . have reason to believe that life or limb is in *immediate* jeopardy and that the intrusion is reasonably necessary to alleviate the threat.'") (quoting *Good v. Dauphin Cty. Soc. Servs,* 891 F.2d 1087, 1094 (3d Cir. 1989)) (emphasis added); *Wilmot v. Tracey*, 938 F. Supp. 2d 116, 138 (D. Mass. 2013) ("A warrantless entry into a home to investigate an allegation of *ongoing* child abuse could either fall within the 'exigent circumstances' exception to the Fourth Amendment warrant requirement, or within that class of warrantless searches deemed reasonable 'if conducted in furtherance of . . . [a] "special need," which would be undermined systemically by an impracticable warrant or probable-cause requirement.'") (quoting *McCabe v. Life-Line*

*Ambulance Serv., Inc.*, 77 F.3d 540, 545 (1st Cir. 1996)) (emphasis added); *Gordon*, 29 N.E.3d at 864-65 ("We think that it is consistent with th[e] strong public policy [against domestic violence] to recognize that evidence that a person requesting police assistance may have been the victim of domestic violence is a factor that police may consider in determining an emergency exists involving a particular individual and whether a warrantless entry is reasonably necessary to render assistance [to that individual] under the emergency aid exception."). Defendant's proposed entry into the apartment with Minor 1 would not have served to protect the child. Thus, it was clear under state law that Defendant lacked probable cause to arrest Plaintiff for the crime of interfering with a police officer's performance of his duties, and no reasonable officer in Defendant's position would have arrested Plaintiff for that crime. *See Wilber*, 872 F.3d at 22; *Maldonado*, 568 F.3d at 269 ("'[T]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'") (quoting *Brosseau v. Haughen*, 543 U.S. 194, 199 (2004) (per curiam)). Accordingly, qualified immunity does not shield Defendant from liability for unlawfully arresting Plaintiff without probable cause based on the offense of interference with the duties of a police officer.[8]

Defendant's reliance on *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12 (1st Cir. 2001), and *Fletcher v. Town of Clinton*, 196 F.3d 41 (1st Cir. 1999), to buttress his immunity claim is unavailing because in those cases, unlike the case at bar, the state officials'

---

[8] Defendant also claims immunity under Mass. Gen. Laws ch. 119, § 51A, which exempts mandated reporters from liability "by reason of such report," and under Mass. Gen. Laws ch. 209A, § 6, which provides immunity for damages due to the lawful arrest of a "party to a domestic violence incident" (Dkt. No. 9 at 8, 10). However, these provisions are clearly inapplicable here.

warrantless actions were made in response to perceived imminent threats to others' safety (Dkt. No. 9 at 6, 9). In *Hatch*, the court found that an investigator for the Rhode Island Department of Children, Youth and Their Families ("DCYF"), was entitled to qualified immunity for removing a child from plaintiff's home and placing him in temporary DCYF custody without a court order based on a "reasonable basis to suspect" that plaintiff was abusing the child. *See Hatch*, 274 F.3d at 21-25. *Fletcher* addressed the availability of qualified immunity for officers who cited safety concerns to support their entry into plaintiff's home without a warrant or her consent. *See Fletcher*, 196 F.3d at 47. The officers, who knew that plaintiff had obtained a protective order against her abusive boyfriend and observed him inside, were entitled to qualified immunity for their warrantless entry into the plaintiff's home in light of the exigent circumstances presented by their reasonable belief that the plaintiff was at risk of being the victim of domestic violence. *Id.* at 44, 53. Likewise, Section 6 of Mass. Gen. Laws ch. 209, upon which Defendant also relies, does not confer additional rights upon the police in cases of domestic violence, but characterizes imminent threats of domestic violence as emergencies that are excepted from the warrant requirement.[9] *See Commonwealth v. Rexach*, 478 N.E.2d 744, 746 (Mass. App. Ct. 1985) ("Although Fourth Amendment rights are paramount, in family abuse situations . . . [ch.] 209A, § 6 . . . *requires* that the police officers 'use all reasonable means to prevent further abuse'" including warrantless entries).

    In summary, the facts set forth in the complaint defeat Defendant's claim that he is entitled to qualified immunity as to Plaintiff's § 1983 claim of unlawful arrest. In light of the

---

[9] Defendant also relies upon his status under Mass. Gen. Laws ch. 119, § 51A as a mandated reporter to the DCF of suspected child abuse. However, he cites no legal authority for his position that, without a continuing threat, his duty as a mandated reporter permitted or required him to enter Tamika's apartment without a warrant. *See Wilmot*, 938 F. Supp. 2d at 138.

complaint's allegations, no reasonable officer could have concluded that there was probable cause to arrest Plaintiff for disorderly conduct or disturbing the peace and, therefore, the qualified immunity analysis does not support Defendant's claim that he is protected from liability based on those offenses.  *See Campbell*, 166 F. Supp. 3d at 151 (the right to be free from arrest without probable cause "has been clearly established by the U.S. Supreme Court for decades.") (citing *Michigan v. Summers*, 452 U.S. 692, 700 (1981)).  Further, Defendant's "conduct was such an obvious violation of plaintiff's Fourth Amendment right that he would not have required prior case law to be placed on notice that the conduct was unlawful under the second prong of qualified immunity." *Rogers v. Cofield*, 908 F. Supp. 2d 277, 283 (D. Mass. 2012).  The need for probable cause to arrest was well-settled and an objectively reasonable officer in Defendant's position would have recognized that he lacked the necessary probable cause to believe that Plaintiff had committed the crimes of disorderly conduct, disturbing the peace, or interference with the duties of a police officer.  *Id.*  Accordingly, Plaintiff has stated a viable cause of action under § 1983 based on her unlawful arrest and the court recommends that Defendant's motion to dismiss Count I be denied.

### 2.    Count II – MCRA Violation

In Count II, Plaintiff claims that "Defendant by means of threats, intimidation, and coercion, intentionally and unlawfully arrested [her] without probable cause, thereby depriving [her] of the right to be free from unreasonable search and seizure as guaranteed by Article 14 of the Massachusetts Declaration of Rights" (Dkt. No. 1 ¶ 61).[10]  Defendant contends that the

---

[10] "The standard for probable cause for arrest under Article 14 of the Massachusetts Declaration of Rights mirrors that of the Fourth Amendment to the United States Constitution." *Nuon*, 768 F. Supp. 2d at 330.

MCRA claims should be dismissed because the complaint fails to state a viable claim of interference with a secured right by means of "threats, intimidation, or coercion" as required by the MCRA (Dkt. No. 9 at 15).  Citing *Nuon*, 768 F. Supp. 2d at 335 n.8, Plaintiff counters that "an arrest unsupported by probable cause . . . is actionable as a civil rights violation under the MCRA" (Dkt. No. 11 at 7).  In the court's view, Defendant has the better argument.

"To state a claim under the MCRA, a plaintiff must show that (1) [her] exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth of Massachusetts (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." *Farrah ex rel. Estate of Santana v. Gondella*, 725 F. Supp. 2d 238, 247 (D. Mass. 2010) (citing *Swanset Dev. Corp. v. City of Taunton,* 668 N.E.2d 333, 337 (Mass. 1996)).[11]  "The MCRA is

---

[11] The MCRA provides, in relevant part:

> Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured.

Mass. Gen. Laws ch. 12, § 11H.

> Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages.  Any aggrieved person or persons who prevail in an action authorized by this section shall be entitled to an award of the costs of the litigation and reasonable attorneys' fees in an amount to be fixed by the court.

Mass. Gen. Laws Ann. ch. 12, § 11I.

coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not, and the derogation of secured rights must occur by threats, intimidation, or coercion." *Sietins*, 238 F. Supp. 2d at 377-78 (quotations and citations omitted). "For purposes of the MCRA, 'a "threat" involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm[,] "intimidation" involves putting in fear for the purpose of compelling or deterring conduct[, and] "coercion" involves the application to another of such force, either physical or moral, as to constrain a person to do against his will something he would not otherwise have done.'" *Titus v. Town of Nantucket,* 840 F. Supp. 2d 404, 416 (D. Mass. 2011) (quoting *Farrah*, 725 F. Supp. 2d at 247).

Although some courts in this district agree with Plaintiff's contention that "[a]n arrest without probable cause . . . constitute[s] coercion within the meaning of the MCRA," *Nuon*, 768 F. Supp. 2d at 335 n.8., that does not appear to be the prevailing view.  Instead,   "[t]he majority of courts have held that in cases involving wrongful arrests or excessive force, the fact of a Fourth Amendment violation, standing alone, does not give rise to a claim under the MCRA." *Ciolino v. Eastman,* 128 F. Supp. 3d 366, 380 (D. Mass. 2015).  *See Longval v. Comm'r of Corr.,* 535 N.E.2d 588, 593 (Mass. 1989).  "Rather, MCRA liability arises only when '(1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do.'" *Ciolino,* 128 F. Supp. 3d at 380 (quoting *Goddard,* 629 F. Supp. 2d at 128).  *See Santiago v. Keyes*, 890 F. Supp. 2d 149, 155 (D. Mass. 2012) (collecting cases, analyzing the MCRA, and concluding that "the better approach is that taken by courts concluding that 'the constitutional violation itself cannot also serve as the

prerequisite "threats, intimidation or coercion" under the MCRA.'") (quoting *Gallagher v. Commonwealth of Mass.*, No CIV.A. 00-11859-RWZ, 2002 WL 924243, at *3 (D. Mass. Mar. 11, 2002)).[12]

As discussed earlier, Plaintiff was arrested without probable cause in violation of the Fourth Amendment and the allegations that Defendant shoved Plaintiff twice and cocked his fist as she approached could be viewed as threatening, intimidating, and coercive under the MCRA. However, Plaintiff does not identify a right of which she was deprived that is separate and distinct from her alleged unlawful arrest. *See Eason v. Alexis*, 824 F. Supp. 2d 236, 245 (D. Mass. 2011). "The problem is ascertaining the constitutional rights that the assault or the threat were directed to:  what did the plaintiff give up that [s]he had a constitutional right to do?"

---

[12] The following cases have held that the fact of plaintiff's unlawful arrest or an officer's use of excessive force failed to satisfy the requisite burden of proving both:  (1) a violation of a plaintiff's Fourth Amendment rights, and (2) separate acts of threats, intimidation, and coercion aimed at achieving a violation of the plaintiff's rights that are distinct from those implicated by the arrest or the use of excessive force:  *Ciolino*, 128 F. Supp. 3d at 381; *Bettencourt v. Arruda*, Civil Action No. 10-11487-JGD, 2012 WL 5398475, at *13 (D. Mass. Nov. 1, 2012); *Santiago*, 890 F. Supp. 2d at 156; *Inman*, 2012 WL 1980408, at *14; *Eason*, 824 F. Supp. 2d at 245; *Titus*, 840 F. Supp. 2d at 416; *Parks v. Town of Leicester*, Civil Action No. 10-30120-FDS, 2011 WL 864823, at *5-6 (D. Mass. Mar. 9, 2011); *Farrah*, 725 F. Supp. 2d at 248; *Goddard*, 629 F. Supp. 2d at 128-29; *Gallagher*, 2002 WL 924243, at *3.  On the other hand, the following cases have found potential liability under the MCRA based on an arrest without probable cause: *Rosencranz v. Freeman*, CIVIL ACTION NO. 14-13050-JGD, 2017 WL 1217112, at *11 (D. Mass. Mar. 31, 2017) (denying summary judgment on plaintiff's MCRA claim based on a factual dispute concerning whether or not defendant had probable cause to arrest plaintiff); *Nuon*, 768 F. Supp. 2d at 335 n.8; *Daley v. Harber*, 234 F. Supp. 2d 27, 31-32 (D. Mass. 2002) (concluding that the Supreme Judicial Court's decision in *Planned Parenthood League of Mass., Inc. v. Blake*, 631 N.E.2d 985 (Mass. 1994) "significantly narrowed its holding in *Longval* and rejected precisely the 'direct violation' argument . . . ."); *Zurakowski v. D'Oyley*, 46 F. Supp. 2d 87, (D. Mass. 1999) (describing the parties' agreement that "the . . . coercion involved in taking [the plaintiff] into custody supplied that element of the Massachusetts civil rights claim").  (These lists are not meant to be exhaustive.)

*Goddard*, 629 F. Supp. 2d at 128.  *See Farrah,* 725 F. Supp. 2d at 248 ("What is absent, . . . is

any showing (or even pleading) that the violation was intended to coerce [plaintiff] into

refraining from the exercise of a right or privilege secured by law.").  Plaintiff acknowledges that

she had no Fourth Amendment right to exclude Defendant from Tamika's apartment and she

does not allege that Defendant's behavior infringed upon her First Amendment rights to express

additional opinions.  Indeed, she could not assert a viable MCRA claim based upon her previous

statements to Defendant.  *See Eck v. Neal*, Civil Action No. 1:14-cv-13693-ADB, 2017 WL

4364171, at *7 (D. Mass. Sept. 29, 2017) ("To prove a violation of the MCRA . . . [plaintiff]

must demonstrate that [d]efendants used the arrest or the threat of arrest to prevent him from

exercising his free speech rights in the future, not merely to retaliate against him for previous

statements.").  Accordingly, the court recommends that Defendant's motion to dismiss Count II

be allowed.

Although "[t]he MCRA affords the same standards of qualified immunity for public

officials as that applicable under § 1983," *Wilber*, 2016 WL 5340308, at *5, an immunity

analysis is unnecessary if Defendant did not violate the MCRA.  However, to the extent the

presiding judge adopts the minority view and determines that Defendant violated the MCRA by

arresting Plaintiff without probable cause, Defendant would not be entitled to qualified immunity

for the reasons articulated in the § 1983 false arrest analysis and would not be entitled to

dismissal of Count II.  *See Howcroft v. City of Peabody*, 747 N.E.2d 729, 746 (Mass. App. Ct.

2001) ("The qualified immunity principles developed under § 1983 apply equally to claims under

the MCRA.") (citing *Duarte v. Healy*, 537 N.E.2d 1230, 1232-33 (Mass. 1989)).

        3.        Count III - False Arrest (Common Law)

Plaintiff alleges a common law claim for false arrest in addition to the claims of unlawful arrest under § 1983 and the MCRA.  "To maintain a cause of action for false arrest under Massachusetts law, a plaintiff must establish that 1) the defendant arrested the plaintiff and 2) without probable cause." *Eason*, 824 F. Supp. 2d at 241 (citing *Lucas v. City of Boston,* Civil Action No. 07–cv–10979–DPW, 2009 WL 1844288, at *25 (D. Mass. June 19, 2009)).  The parties do not dispute that Defendant arrested Plaintiff and, as previously discussed, the facts alleged in the complaint establish the absence of probable cause for Plaintiff's arrest as a matter of law.  Accordingly, the court recommends that Defendant's motion to dismiss Count III be denied.

### 4.    Count IV - False Imprisonment

Plaintiff's next claim, which is set forth in Count IV of the complaint, alleges false imprisonment based upon her arrest and confinement without probable cause.  Under Massachusetts law, "[f]alse imprisonment is the 'intentional and unlawful confinement of a person, either directly or indirectly, of which the person confined is conscious or is harmed by such confinement.'" *Goddard*, 629 F. Supp. 2d at 129 (quoting *Jonielunas v. City of Worcester Police Dep't*, 338 F. Supp. 2d 173, 177 (D. Mass. 2004)).  "A police officer is liable for false imprisonment if he arrests, or causes the arrest, of the plaintiff, without probable cause." *Id.* Consequently, "the standard for evaluating a claim of false imprisonment 'is essentially the same as the Fourth Amendment standard for unlawful arrest.'" *Rosencranz*, 2017 WL 1217112, at *12 (quoting *Goddard*, 629 F. Supp. 2d at 129).  Because the complaint alleges a viable § 1983 claim based upon the absence of probable cause to arrest Plaintiff, the court recommends that Defendant's motion to dismiss Count IV be denied.

### C.    Claims Concerning Defendant's Purported Use of Excessive Force

1.      Count V – Excessive Force Under § 1983

In Count V, Plaintiff claims that Defendant used excessive force in the course of warding

off her attempts to prevent him from entering Tamika's apartment (Dkt. No. 11 at 17-18).

Defendant counters that a claim under § 1983 does not lie because Plaintiff was not "seized"

during the confrontation on the porch, if she was, any force he applied was reasonable due to his

alleged duty to prevent further abuse, and, if the force used was excessive, he is entitled to

qualified immunity (Dkt. No. 9 at 17-19).  In view of the alleged facts and the law, Defendant's

argument is not persuasive.

The framework for the analyses of a § 1983 violation and the application of qualified

immunity was recited earlier and need not be repeated here.  Like Plaintiff's claim for unlawful

arrest, the excessive force claim alleges a violation of her Fourth Amendment right to be free

from unreasonable searches and seizures.  *See Graham,* 490 U.S. at 395 (under the Fourth

Amendment, "the 'reasonableness' of a particular seizure depends not only on *when* it is made,

but also on *how* it is carried out"); *United States v. Mendenhall*, 446 U.S. 544, 550 (1980).  "In

order to establish a Fourth Amendment claim based on alleged excessive use of force, Plaintiff

must show (1) that there was a 'seizure' within the meaning of the Fourth Amendment; and that

(2) the use of force during the seizure was unreasonable under the circumstances." *McCormack*

*v. Town of Whitman*, Civil Action No. 10-10461-PBS, 2013 WL 1187093, at *7 (D. Mass. Mar.

20, 2013) (citing *Graham*, 490 U.S. at 394-95).

Defendant maintains that the complaint fails to allege sufficient facts to establish that he

seized Plaintiff thereby depriving her of Fourth Amendment rights when he pushed her down and

cocked his fist in response to her attempts to prevent him from entering Tamika's apartment

(Dkt. No. 9 at 17).  However, a Fourth Amendment seizure is not limited to an arrest or an

investigatory stop.  *See Graham*, 490 U.S. at 395.  "A seizure of a person occurs when, '"by means of physical force or show of authority,"' an officer takes intentional action that 'terminates or restrains [a person's] freedom of movement.'"  *Deluca v. Merner*, CIVIL ACTION NO. 4:15-CV-40094-TSH, 2016 WL 111413, at *2 (D. Mass. Jan. 11, 2016) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)).  *See United States v. Sealey*, 30 F.3d 7, 9 (1st Cir. 1994).  "[W]henever a police officer accosts an individual and restrains his [or her] freedom to walk away, he has 'seized' that person."  *Terry v. Ohio*, 392 U.S. 1, 16 (1968).  "Generally, 'a seizure occurs if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."'"  *Deluca,* 2016 WL 111413, at *2 (quoting *Brendlin*, 551 U.S. at 255).  *See California v. Hodari D.,* 499 U.S. 621, 626 (1991) (a seizure may occur "even though the subject does not yield.").  The length of time a person's movement is restricted is not a controlling factor.  *See United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984) (defining "seizure" of the person as the "meaningful interference, however brief, with an individual's freedom of movement").

Construing Plaintiff's allegations and drawing all reasonable inferences therefrom in the light most favorable to her, the complaint sufficiently alleges that Plaintiff was seized through Defendant's use of physical force and his show of authority.  Defendant restrained Plaintiff's freedom of movement by shoving her twice and causing her to fall onto the porch floor and caused her to submit to his show of authority by cocking his fist toward Plaintiff as he stood between her and the door to Tamika's apartment (*id.* ¶¶ 40, 41, 42).  Consequently, Defendant seized Plaintiff, albeit briefly.  *See Brendlin*, 551 U.S. at 255 (a seizure occurs even when the "'resulting detention is quite brief'") (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)); *see also United States v. Sugrim*, 732 F.2d 25, 28 (2nd Cir. 1984) ("A detention no matter how

momentary is a seizure under the Fourth Amendment.") (citing *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

"[T]he critical question for purposes of [the second element of] an excessive force claim is 'whether "the defendant officer employed force that was unreasonable under the circumstances."'" *Bettencourt v. Arruda*, Civil Action No. 10-11487-JGD, 2012 WL 5398475, at *8 (D. Mass. Nov. 1, 2012) (quoting *Raiche*, 623 F.3d at 36). In turn, "[t]he reasonableness inquiry is objective, to be determined 'in light of the facts and circumstances confronting [the officer] without regard to [his] underlying intent or motivation.'" *Jennings v. Jones,* 499 F.3d 2, 11 (1st Cir. 2007) (quoting *Graham,* 490 U.S. at 397). "This determination requires [the court] to balance the individual's interest against the government's, weighing three non-exclusive factors: (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Raiche*, 623 F.3d at 36 (quoting *Graham,* 490 U.S. at 396); *see also Morelli v. Webster,* 552 F.3d 12, 23 (1st Cir. 2009).

Here, taking the allegations in the complaint as true, the nature and quality of the intrusion on Plaintiff's liberty outweighed the government's interest. As to the first *Graham* factor, Defendant allegedly believed Plaintiff was committing the crimes of disorderly conduct, resisting arrest, and assault and battery when she attempted to prevent him from entering Tamika's apartment. These crimes were misdemeanors.[13] Regarding the second and third

---

[13] "A crime punishable by death or imprisonment in the [s]tate prison is a felony. All other crimes are misdemeanors." Mass. Gen. Laws ch. 274, § 1. Disorderly conduct is punishable by not more than six months in a jail or house of correction, s*ee* Mass. Gen. Laws ch. 272, § 53, resisting arrest is punishable by "imprisonment in a jail or house of correction for not more than two and one-half years," Mass. Gen. Laws ch. 268, § 32B, and assault and battery is punishable by "imprisonment for not more than 2 ½ years in a house of correction." Mass. Gen. Laws ch. 265, § 13A(a).

*Graham* factors, Plaintiff did not commit a crime and her attempt to prevent Defendant's entry

into the apartment did not pose a threat to Defendant, Minor 1, or the public.  Thus, her actions

were not sufficient to provoke the amount of force Defendant allegedly employed.  *Compare*

*Bettencourt*, 2012 WL 5398475, at *9 (officer used excessive force where "[t]he facts presented

by [the plaintiff] show that at the time of the alleged use of force, [he] was not engaged in any

criminal activity and was not acting in a manner that would have posed a threat to [the

defendant] or anyone else at the scene.  Furthermore, there is no evidence indicating that [the

plaintiff] ever resisted or attempted to evade arrest.").  Accordingly, the facts alleged in the

complaint are sufficient to establish a violation of Plaintiff's Fourth Amendment rights.  *See*

*Graham*, 490 U.S. at 394-95; *Raiche*, 623 F.3d at 38 (defendant violated plaintiff's Fourth

Amendment right by using excessive force against him).

Because Plaintiff's Fourth Amendment right to be free from excessive force was clearly

established in March 2015 when Defendant committed the violation, qualified immunity does

not shield Defendant from liability.  *See Rogers*, 908 F. Supp. 2d at 287-88 ("Clearly established

law at the time of the . . . incident prohibited the use of excessive force under the Fourth

Amendment's right to be free from an unreasonable seizure of the person.").  The settled law

gave officers fair notice that exerting excessive force against a person who was not threatening

the officer or endangering others' safety clearly violated the Fourth Amendment.  *See Raiche*,

623 F.3d at 38-39; *Jennings,* 499 F.3d at 16–17.  Likewise, "[t]he use of violence against

individuals who pose no safety threat is clearly unreasonable, and that fact would have been

understood by an objectively reasonable officer."  *Goddard*, 629 F. Supp. 2d at 128.  *Compare*

*Ciolino*, 128 F. Supp. 3d at 376 (defendant's "decision to execute a 'take-down' on [plaintiff] and

forcibly pull his body down to the pavement could be found to be an objectively unreasonable use of force on a non-threatening, compliant individual."); *McCormack v. Town of Whitman*, Civil Action No. 10-10461-PBS, 2013 WL 1187093, at *9 (D. Mass. Mar. 20, 2013) ("With respect to the qualified immunity defense, a reasonable officer should have known that intentionally driving a car into or in front of a fleeing teenager accused of throwing snowballs and making verbal threats violated [plaintiff's] Fourth Amendment rights."). [14]

Because the complaint adequately alleges that Defendant used excessive force on Plaintiff by pushing her to gain access to Tamika's apartment, Plaintiff alleges sufficient facts to establish a violation of her constitutional rights based on the use of excessive force before her arrest. Accordingly, the court recommends that Defendant's motion to dismiss Count V of the complaint be denied.

2. Count VI – Excessive Force under the MCRA

Plaintiff's excessive force MCRA claim is based on the same conduct as her § 1983 excessive force claim. As discussed earlier, "the MCRA is generally interpreted coextensively with Section 1983," *Diaz*, 229 F. Supp. 3d at 112, except that the MCRA also requires that the interference with constitutional or state law rights be accomplished "'by threats, intimidation, or coercion.'" *Santiago*, 890 F. Supp. 2d at 154 (quoting *Bally v. Ne Univ.*, 532 N.E.2d 49, 52 (Mass. 1989)). In the court's view, Plaintiff's assertion of an MCRA violation based on Defendant's alleged use of excessive force suffers from the same flaw as her MCRA claim based on her alleged false arrest; that is, she fails to identify a right that Defendant's threats,

---

[14] Defendant's reliance on *Cty. of L.A. v. Mendez*, 137 S.Ct. 1539 (2017), is unavailing (Dkt. No. 18). In rejecting the Ninth Circuit's provocation rule, the Court stated, "[i]f there is no excessive force claim under *Graham*, there is no excessive force claim at all." *Id.* at 1547. Here, for the reasons discussed, there is a valid excessive force claim under *Graham* that is wholly distinct from the false arrest claim. *See id.*

intimidation, or coercion forced her to surrender (Dkt. No. 11 at 16-18).  *See Farrah,* 725 F. Supp. 2d at 248; *Gallagher*, 2002 WL 924243, at \*3; *Columbus v. Biggio*, 76 F. Supp. 2d 43, 54 (D. Mass. 1999).  *Compare Inman,* 2012 WL 1980408, at \*14 (granting summary judgment where plaintiffs failed to "offer evidence that the officer's use of force was intended to coerce plaintiff into foregoing some other right"); *Orwat v. Maloney*, 360 F. Supp. 2d 146, 164-65 (D. Mass. 2005) (granting summary judgment on plaintiff's MCRA excessive force claim because "'[c]onduct, even unlawful conduct, . . . lacks the[] qualities [of threats, intimidation, or coercion] when all it does is take someone's rights away directly.'") (quoting *Longval*, 535 N.E.2d at 593). Thus, Defendant is entitled to dismissal of Count VI unless the presiding judge adopts the minority view previously described in the discussion of Plaintiff's MCRA claim for unlawful arrest.  If the court takes this position, Defendant would not be entitled to dismissal of Count VI because the MCRA claim is coextensive with the § 1983 claim and qualified immunity would not shield him from liability.

   3.  Count VII - Assault and Battery

  Plaintiff contends that Defendant's acts of "violently shoving" her away from the door while seizing her amounted to an assault and battery under Massachusetts law (Dkt. No. 11 at 17-18).  "Assault and battery is the 'intentional and unjustified use of force upon the person of another, however slight, or the intentional doing of a wanton or grossly negligent act causing personal injury to another.'"  *Goddard*, 629 F. Supp. 2d at 129 (quoting *Commonwealth v. McCan,* 178 N.E. 633, 634(Mass. 1931)).  "However, as in the case of a Fourth Amendment seizure, 'Massachusetts law also allows an officer to use reasonable force in conducting a lawful arrest' or seizure."  *Bettencourt*, 2012 WL 5398475, at \*12 (quoting *Raiche*, 623 F.3d at 40).  "Accordingly, where, as here, 'a plaintiff alleges both a § 1983 excessive force claim and

common law claims for assault and battery, [the] reasonableness of the force used under § 1983 controls [the] determination of reasonableness of the force used under the common law assault and battery claims.'"  *Id.* (quoting *Raiche*, 623 F.3d at 40).  Because Plaintiff presents a plausible allegation of Defendant's use of excessive force during a seizure, the court recommends that Defendant's motion to dismiss Count VII be denied.

D. <u>Claims Concerning Defendant's Application for a District Court Complaint</u>

1. Count VIII - Malicious Prosecution

In Count VIII, Plaintiff contends that Defendant maliciously prosecuted her by filing an application for a criminal complaint in the Springfield District Court charging the crimes of assault and battery, resisting arrest, and disorderly conduct (Dkt. No. 1 ¶¶ 51, 52, 84-88).  To prevail on a claim of malicious prosecution [under Massachusetts law], a plaintiff must prove: "(1) the commencement or continuation of a criminal proceeding against the eventual plaintiff at the behest of the eventual defendant; (2) the termination of the proceeding in favor of the accused; (3) an absence of probable cause for the charges; and (4) actual malice."  *Nieves v. McSweeney*, 241 F.3d 46, 53 (1st Cir. 2001) (citing *Correllas v. Viveiros,* 572 N.E.2d 7, 10 (Mass. 1991)).

As to the first element, the complaint alleges that Defendant applied for the criminal complaint (Dkt. No. 1 ¶ 51).  For the reasons previously discussed, the facts alleged in the complaint are sufficient to establish the second element -- the lack of probable cause to arrest Plaintiff for disorderly conduct -- and the third element is satisfied by the court's entry of a required finding of not guilty on one charge and the jury's not guilty verdict as to the remaining charges (*id.* ¶ 54).  As to the element of malice, which is defined as "'any wrong or unjustifiable motive' . . . [i]t may be inferred from a lack of probable cause."  *Campbell*, 166 F. Supp. 3d at

153 (quoting *Limone v. United States*, 579 F.3d 79, 89 (1st Cir. 2009)).  *See also Gouin v. Gouin*, 249 F. Supp. 2d 62, 71 (D. Mass. 2003).  In addition, questions of motive or intent are not conducive to resolution on a motion to dismiss.  *See Edsall v. Assumption Coll.,* 367 F. Supp. 2d 72, 85 (D. Mass. 2005) ("Because the issue [of actual malice] inevitably turns on motivations and intent, it is ill-suited for resolution in a motion to dismiss.").  Accordingly, the court recommends that Defendant's motion to dismiss Count VIII be denied.

> 2.      Count IX – Abuse of Process

Because Defendant makes no specific argument supporting dismissal of Plaintiff's common law abuse of process claim, his motion to dismiss Count IX should be denied (Dkt. No. 9 at 11, 15-16).  *See Cabrera-Berrios v. Pedrogo*, 21 F. Supp. 3d 147, 154 (D.P.R. 2014).  To the extent Defendant's mention of this claim in his memorandum in support of his motion to dismiss is construed as supporting dismissal, it is unavailing.

"In Massachusetts, a claim for abuse of process lies where a police officer brings criminal charges against a defendant for 'an ulterior or illegitimate purpose.'"  *Eason*, 824 F. Supp. 2d at 243 (quoting *Gutierrez v. Mass. Bay Transp. Auth.,* 772 N.E.2d 552, 563 (Mass. 2002)).  "The elements of an abuse of process claim are (1) the defendant used 'process' (2) for an ulterior or illegitimate purpose (3) resulting in damage."  *Cabot v. Lewis*, 241 F. Supp. 3d 239, 259–60 (D. Mass. 2017) (citing *Millennium Equity Holdings, LLC v. Mahlowitz*, 925 N.E.2d 513, 522 (Mass. 2010)).  The complaint plainly alleges that Defendant initiated process against Plaintiff by applying for a criminal complaint (Dkt. No. 1 ¶ 51).  *See Eason,* 824 F. Supp. 2d at 243 ("An application for a criminal complaint constitutes 'process' under the statute.") (citing *Gouin,* 249 F. Supp. 2d at 76).

"[A]n ulterior motive is an essential element of the tort of abuse of process when the claim is based solely on commencement of an action." *Ladd v. Polidoro*, 675 N.E.2d 382, 384 (Mass. 1997). An ulterior motive "is not simply the intent to harm the other party directly by bringing suit, but rather the intent to gain some other end indirectly." *Psy–Ed Corp. v. Klein,* 947 N.E.2d 520, 535 n.35 (Mass. 2011). "There must be an ulterior purpose '"to gain some collateral advantage," which "has been compared to extortion, in that the defendant has allegedly tried to extract some advantage by wrongful means."'" *Cardoso v. City of Brockton*, Civil Action No. 12-10892-DJC, 2014 WL 6698618, at *18 (D. Mass. Aug. 11, 2014) (quoting *Damon v. Hukowicz,* 964 F. Supp. 2d 120, 141 (D. Mass. 2013)). *See Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994) ("The gravamen of that tort is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends.").

> "[I]t is immaterial that the process was properly issued, that it was obtained in the course of proceedings which were brought with probable cause and for a proper purpose or even that the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed . . . ."

*Quaranto v. Silverman,* 187 N.E.2d 859, 861 (Mass. 1963) (quoting Restatement (First) of Torts § 682 cmt. a (Am. Law Inst. 1938)).

Although "an abuse of process claim can lie whether or not there was probable cause" to arrest, *Faust v. Coakley,* Civil Action No. 07-11209-RWZ, 2008 WL 190769, at *4 (D. Mass. Jan. 8, 2008), and although an officer's knowledge that he lacked probable cause for arrest does not, alone, satisfy the ulterior purpose element, *see Lund v. Henderson*, 22 F. Supp. 3d 94, 108 (D. Mass. 2014), the fact that the arresting officer knew or had reason to know that the arrest was not supported by probable cause is relevant "as tending to show that the process was used for an ulterior purpose." *Fishman v. Brooks*, 487 N.E.2d 1377, 1383 (Mass. 1986). Plaintiffs have

asserted viable claims of abuse of process where police officers have instituted criminal charges to "cover up their misdeeds," such as arresting a plaintiff without probable cause or using excessive force, as alleged here. *Eason*, 824 F. Supp. 2d at 243. *See Philbrook v. Perrigo*, 637 F. Supp. 2d 48, 54-55 (D. Mass. 2009) (denying summary judgment on abuse of process claim where it was reasonable to infer that officers initiated process to cover up their wrongful arrest of the plaintiff). In addition, similar to the claim of malicious prosecution, Plaintiff's claim for abuse of process presents a question of Defendant's motive, which is not amenable to resolution on a motion to dismiss. *See Santiago*, 891 F.2d at 388 ("The basis of the action for abuse of process is the motivation of the officer in making the arrest."). For these reasons, the court recommends that Defendant's motion to dismiss Count IX be denied.

IV.    CONCLUSION

For the above-stated reasons, the undersigned recommends that Defendant's motion to dismiss Counts I, III, IV, V, VII, VIII, and IX be denied, and his motion to dismiss the MCRA claims, Counts II and VI, be granted.[15]

Dated:  December 22, 2017                          /s/ Katherine A. Robertson
                                                   KATHERINE A. ROBERTSON
                                                   UNITED STATES MAGISTRATE JUDGE

---

[15] The parties are advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. *See Keating v. Sec'y of Health & Human Servs.*, 848 F.2d 271, 275 (1st Cir. 1988); *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-79 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 604 (1st Cir. 1980). *See also Thomas v. Arn*, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.